-O-

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEGAN T. WILKINSON, | ) Case No. ED CV 07-428-OP |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION AND |
| v. | ) ORDER |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| Defendant. | ) |
| | ) |

The Court[1] now rules as follows with respect to the five disputed issues listed in the Joint Stipulation ("JS").[2]

**I.**

**DISPUTED ISSUES**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 7, 8.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

As reflected in the Joint Stipulation, the disputed issues which Plaintiff is raising as the grounds for reversal and/or remand are as follows:

1) Whether the ALJ properly considered the findings of Plaintiff's treating and/or examining physicians at Desert Hospital;

2) Whether the ALJ properly considered Dr. Chander's assessment of Plaintiff's Global Assessment of Functioning ("GAF") scores of 45 and 65, and Dr. Smith's GAF score of 59;

3) Whether the ALJ properly considered Plaintiff's medical impairment and its severity;

4) Whether the ALJ erred by failing to obtain testimony from a Vocational Expert ("VE"); and

5) Whether the ALJ properly evaluated Plaintiff's RFC by utilizing the dual analysis required in claims where substance abuse may be a material factor.

(JS at 2, 13, 18.)

## II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

## III.
## DISCUSSION

**A. The ALJ Properly Considered the Findings of Plaintiff's Treating and/or Examining Physicians.**

On January 17, 2004, Plaintiff was admitted to the Desert Regional Medical Center Emergency Trauma facility under California Welfare & Institutions Code section 5150 where she was given an initial diagnosis of major depressive disorder.[3] (JS at 3.) Plaintiff contends the ALJ selectively considered and mischaracterized the evidence in order to support his own conclusion. (Id. at 5.) Specifically, Plaintiff complains that the ALJ did not discuss the admitting diagnosis. (Id.) She also complains that the ALJ misstated a January 2004 report prepared by Dr. Kalika Chander, who wrote that Plaintiff's urine drug screen was negative for drugs of abuse" (AR at 154), when he stated that "laboratory testing was positive for marijuana. (Exhibit 2F, pp. 1-3)." (Id. at 13.)

It is well established in the Ninth Circuit that a treating physician's opinion is entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an

---

[3] Due to financial considerations, Plaintiff was transferred on January 18, 2004, to Loma Linda and referred to Dr. Kalika Chander. (AR at 137-39.)

3

individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(d), 416.927(d). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

Plaintiff attempts to portray the record as "confusing" regarding the presence of cannabinoids in Plaintiff's urine. (JS at 4.) However, the Court sees no such confusion. While Plaintiff tested negative for amphetamines, barbiturates, benzodiazapine, cocaine, opiates, and PCP (AR at 148), she tested positive for cannabinoids.[4] (Id. at 149.) Plaintiff also contends that "a

---

[4] Plaintiff also tries to portray the "entire lab report" as questionable because it has footnotes containing "the following sentence: 'Reference range changed due to change of sex at 18 Jan 2004.'" (JS at 4.) A careful reading of the lab report and the other emergency department records, however, make it clear that this is not some reference to an actual sex change by Plaintiff, but merely a reflection that the original Patient ID information on the emergency department Patient Care Record erroneously indicated that Plaintiff was male.
(continued...)

footnote was added on January 18, 2004, changing the original data." (JS at 4.) Although a footnote was added on January 18, 2004, it did not change any data – it merely commented on the fact that the screening provided only a "preliminary test result," and a different test would need to be done "in order to obtain a confirmed analytical result." (AR at 149.)

With respect to the ALJ's alleged mischaracterization of the presence of marijuana in Plaintiff's urine drug screen during her January 2004 stay at Loma Linda University Behavioral Medicine Center, Plaintiff contends Exhibit 2F, pp. 1-3, referenced by the ALJ for this proposition, corresponds to AR at 153-55. However, AR at 153-55, while hand labeled 2F1 through 2F3, is the discharge paperwork from Plaintiff's subsequent February 2004 hospitalization.[5] The January 2004 hospitalization paperwork is hand labeled 2F11 through 2F13[6] (Id. at 163-65) and clearly confirms that Plaintiff's drug screen in the emergency room was positive for marijuana. (Id. at 164.) Indeed, one of Dr. Chander's discharge diagnoses was "Substance abuse." (Id. at 163.) Thus, the Court finds no confusion in the record and concludes

---

[4](...continued)
(See, e.g., AR at 143, 144 ("Age:  21  Sex:  M").) As a result, it appears that the reference ranges used for the clinical laboratory results (id. at 151), may originally have been the ranges appropriate for males. Thus, the notes at the bottom of the lab report merely indicate the different reference range appropriate for females and any changed result flag after Plaintiff's "change of sex." (Id.)

[5] Although Plaintiff's February 2004 urine drug screen was negative (see AR at 154), a March 2004 test was positive for marijuana, and Plaintiff admitted to using marijuana and speed within the prior two to three days. (Id. at 174.)

[6] The Court notes that each of the original discharge summaries were numbered as "Page 1," "Page 2," and "Page 3." (See AR 153-55, 163-65.)

that Plaintiff's complaint that the ALJ mischaracterized this evidence is without merit.

Plaintiff also complains that the ALJ failed to consider Dr. Chander's diagnosis of major depressive disorder or to provide specific and legitimate reasons for rejecting Dr. Chander's opinion.  (JS at 3-5.)  However, the ALJ fully summarized the evidence of Plaintiff's January and February 2004 hospitalizations.  (AR at 13-14.)  He determined that Plaintiff had the severe mental impairments of substance abuse and an affective disorder.  (Id at 12.)  The Regulations provide that an affective disorder includes depressive syndrome.  See, e.g., 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04.  Dr. Chander's diagnoses, therefore, are not inconsistent with the ALJ's final determination, and Plaintiff's complaint is without merit.

**B.     The ALJ Did Not Err in Failing to Mention Plaintiff's GAF Scores.**

On February 19, 2004, when admitted to Loma Linda Behavioral Health Center, Dr. Chander assessed Plaintiff's global assessment of functioning ("GAF") score to be 45.  (Id. at 156.)  On discharge from both her January and February 2004 hospitalizations, Dr. Chander noted a GAF of 65.[7]

---

[7] A score of 65 falls within the "Some mild symptoms" category which indicates either depressed mood and mild insomnia or some difficulty in social, occupational, or school functioning, "but generally functioning pretty well, has some meaningful interpersonal relationships."  American Psychiatric Association:  Diagnostic and Statistical Manual of Mental Disorders 34 (American Psychiatric Ass'n ed., 4th ed. 2000) ("DSM-IV").  A score of 59 falls within the "moderate symptoms" category, characterized by flat affect and circumstantial speech, occasional panic attacks, or moderate difficulty in social, occupational, or school functioning.  Id.  A score of 45, falls within the "serious symptoms" category, described as "(suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."

(continued...)

1  (Id. 1at 153, 163.)  On August 12, 2004, consultative psychiatric examiner,
2  Dr. Linda Smith, determined Plaintiff's GAF score to be 59.  (AR at 271.)
3  Plaintiff claims that her moderate to low GAF scores "tend to have an obvious
4  impact upon her ability to sustain full time gainful employment," and the ALJ
5  erred when he did not discuss any of Plaintiff's GAF scores and did not
6  provide specific and legitimate reasons for rejecting these opinions.  (JS at
7  10.)  The Court is not persuaded that the ALJ's failure to mention these scores
8  equates with a rejection of those opinions and finds no error.
9       GAF scores reflect the "clinician's judgment of the individual's overall
10 level of functioning and include[]  psychological, social and occupational
11 functioning" and are not meant to be a conclusive medical assessment of
12 overall functioning, but rather, are only intended to be "useful in planning
13 treatment[,]   . . . measuring its impact, and in predicting outcome."  DSM-IV
14 at 32-34.  However, the Social Security regulations do not require an ALJ to
15 take the GAF score into account in determining the extent of an individual's
16 disability.  While the score may help the ALJ assess the claimant's ability to
17 work, it is not essential, and the ALJ's failure to rely on the GAF score does
18 not constitute an improper application of the law.  Howard v. Comm'r of Soc.
19 Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of
20 considerable help to the ALJ in formulating the [residual functional capacity
21 ("RFC")], it is not essential to the RFC's accuracy.  Thus, the ALJ's failure to
22 reference the GAF score in the RFC, standing alone, does not make the RFC
23 inaccurate.").
24      Here, Plaintiff's GAF scores were not essential to the accuracy of the
25 RFC.  Each of the assessed GAF scores might well have been accurate at the

---

[7](...continued)
Id.

time it was assessed. However, the Commissioner's regulations provide that more weight is given to longitudinal opinion evidence. 20 C.F.R. § 416.927(d)(2). Each of the 2004 GAF assessments were "snapshot" assessments of Plaintiff's condition at that point in time. See 42 U.S.C. § 423(d); 20 C.F.R. §§ 416.905, 416.927(a). Moreover, the longitudinal evidence indicates improvement with compliance with treatment, and the scores are not inconsistent with the ALJ's findings regarding Plaintiff's functioning which sufficiently accounted for Plaintiff's mild to moderate restrictions.

Based on the foregoing, the ALJ did not err in failing to mention any of the GAF scores in determining Plaintiff's RFC.

## C. **The ALJ Properly Considered Plaintiff's Mental Impairment and Its Severity.**

Plaintiff claims that the ALJ failed to properly rate Plaintiff's mental impairment. (JS at 13.) She specifically contends that the ALJ's reliance on the assessment of the non-examining State Agency physician was error. (Id. at 14.) The Court disagrees.

Where, as here, there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must supplement the five-step sequential evaluation process with additional regulations dealing specifically with mental impairments. Maier v. Comm'r of Soc. Sec. Admin., 154 F.3d 913, 914 (9th Cir.1998) (per curiam). Specifically, the ALJ must determine whether the severity of the claimant's functional limitations are incompatible with the ability to work by ranking the severity of the claimant's deficiencies (none; slight; moderate; marked; extreme) in three different categories (daily living; social functioning; concentration, persistence, or pace), and indicate the number of episodes of decompensation (none; one or

two; three; four or more). 20 C.F.R. § 416.920a. Generally, if the claimant's mental impairment meets part A of a specific listing and the ALJ finds that a claimant's functional limitations are at the extreme or marked level in two of the four categories, then the claimant meets or exceeds the listing. See, e.g., 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(B). The functional limitations are not an RFC assessment but only are used to assess the severity of a claimant's alleged mental impairment. See Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474, 34,477 (1996) ("[T]he limitations identified [in the PRTF] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.") (emphasis added).

In this case, the ALJ found that Plaintiff "has mild restrictions in her activities of daily living; moderate limitations in social functioning and concentration, persistence or pace; and one or two episodes of decompensation." (AR at 13.) In making this determination, the ALJ specifically adopted the assessment of the State Agency psychiatrist, Dr. Emanuel Rosen. (See AR at 16, 254.) State Agency medical consultants are highly qualified physicians who are experts in Social Security disability evaluation. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i).

Accordingly, the ALJ's mental functional assessment was supported by substantial evidence of record. Thus, there was no error.

**D.    The ALJ's Reliance on the Grids Was Not Error.**

Plaintiff contends the ALJ improperly relied solely on the grids in making his step five determination and that it was error not to take testimony from a vocational expert regarding the impact of Plaintiff's nonexertional limitations on her ability to work. (JS at 15.) The Court disagrees.

It is well established that the ALJ may rely upon either the testimony of

9

a VE or by reference to the Guidelines to determine whether a plaintiff can perform work in significant numbers in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999) (citing Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 577-78) (Pregerson, J., concurring) (9th Cir. 1988)). The Guidelines consist of tables, commonly referred to as "grids," that provide a "short-hand method for determining the availability and numbers of suitable jobs for a claimant." 20 C.F.R. § 404, subpt. P, app. 2; Tackett, 180 F.3d at 1101. The ALJ may rely solely on the Guidelines when the relevant grid "completely and accurately represent[s] a claimant's limitations. . . . In other words, a claimant must be able to perform the full range of jobs in a given category, i.e., sedentary work, light work or medium work." Tackett, 180 F.3d at 1101. Where a nonexertional limitation is sufficiently severe so as to significantly limit the range of work permitted by the clamant's exertional limitation, a VE's testimony is necessary. Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007) (quoting Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)); see also Thomas, 278 F.3d at 960; Bruton v. Massanari, 268 F.3d 824, 827 (9th Cir. 2001). Such is not the case here.

Social Security Ruling ("SSR") 83-15[8] defines nonexertional impairments as follows:

> Any job requirement which is not exertional is considered nonexertional. A nonexertional impairment is one which is medically determinable and causes a nonexertional limitation of function or an environmental restriction. Nonexertional impairments may or may not affect a person's capacity to carry out

---

[8] Social Security Rulings are binding on ALJs. Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

10

the primary strength requirements of jobs, and they may or may not significantly narrow the range of work a person can do. (SSR 83-15.)  Thus, nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations.  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); 20 C.F.R. § 404.1569a(c).  Nonexertional limitations include difficulty in:  functioning because of nervousness, anxiety or depression; maintaining attention or concentration; understanding instructions; seeing or hearing; tolerating physical features of a work setting; and manipulative or postural functions (e.g., reaching, handling, stooping, or crouching).  20 C.F.R. § 404.1569a (c)(1).  Moderately severe depression does not warrant departure from the grids.  Hoopai, 499 F.3d at 1077.

Here, the ALJ properly found that Plaintiff's nonexertional impairments only limited Plaintiff to unskilled, object oriented jobs (AR at 17), otherwise she was capable of  performing work at any exertional level.  (Id. at 13.)  Thus, her nonexertional impairments did not significantly limit the range of work permitted by her exertional limitation.  Tackett, 180 F.3d at 1101.

Based on the foregoing, the ALJ properly utilized the grids in the Guidelines to determine that Plaintiff was not disabled, and there was no error.

**E.     The ALJ Was Not Required to Analyze Plaintiff's Substance Abuse in Relation to Disability.**

If an ALJ determines that the claimant is disabled, and there is evidence of substance abuse, the ALJ must then determine whether the substance abuse is a contributing factor material to the disability, i.e., whether the claimant would still be disabled if she stopped abusing drugs or alcohol.  20 C.F.R. §§

11

404.1535, 416.935 ("If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability"); see also Bustamente v. Massanari, 262 F.3d 949, 954-55 (9th Cir. 2001).

Plaintiff contends that remand is required because the ALJ failed to perform this analysis in relation to Plaintiff's substance abuse. (JS at 18-19.) This argument lacks merit. Because the ALJ never determined that Plaintiff was disabled, this analysis was not required. Thus, there was no error.

## IV.

## **ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

DATED: May 6, 2008

HONORABLE OSWALD PARADA
United States Magistrate Judge